IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LORENZO STEWART, ) | |
|     Plaintiff, ) | Case No. 7:21-cv-00315 |
| ) | |
| v. ) | |
| ) | By: Hon. Michael F. Urbanski |
| LAURENCE WANG,[1] ) | Chief United States District Judge |
|     Defendant. ) | |

### MEMORANDUM OPINION

Lorenzo Stewart, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against Dr. Laurence Wang. Stewart is incarcerated at Green Rock Correctional Center ("Green Rock"), where Dr. Wang works for the Virginia Department of Corrections ("VDOC") as the staff physician. Stewart claims that Dr. Wang violated the Eighth Amendment by failing to adequately treat his left foot and ankle issues. Dr. Wang has filed a motion for summary judgment to which Stewart has responded. ECF Nos. 18 and 22. For the reasons set forth below, the motion for summary judgment is **GRANTED**.

### I. Background

#### A. Stewart's Complaint

In his complaint, filed on May 19, 2021, Stewart alleges that Dr. Wang examined his left foot in 2020 and advised him that the foot had fluid in it. Compl., ECF No. 1, at ¶ E. Stewart asserts that he subsequently found out that a bone is bent. Id. He claims that "nothing

---
[1] The Clerk is directed to amend the docket to reflect the correct spelling of the defendant's first name.

has been done to fix it" and that the shoes provided to him do not fit properly and "make [his] foot worse." Id. Along with the complaint, Stewart submitted several exhibits, including informal complaints and grievances asserting that Dr. Wang had "misdiagnosed" him and that he wanted to "go to the hospital to get [his] ankle fixed." Exs. to Compl., ECF No. 1-1, at 9–13.

### B. Dr. Wang's Evidence

In support of his motion for summary judgment, Dr. Wang submitted his own declaration and copies of Stewart's medical records. The evidence indicates that Dr. Wang has been Stewart's treating physician since May 2014, when Stewart was transferred to Green Rock from the Powhatan Reception and Classification Center. Wang Decl. ¶ 7, ECF No. 19-1. Dr. Wang first examined Stewart during his medical intake screening. Id. ¶ 10. Because Stewart has cerebral palsy, Dr. Wang permanently restricted him to a bottom bunk. Id. (citing VDOC-0015, ECF No. 19-3).[2]

In August 2014, Dr. Wang ordered that Stewart be given an ankle support after he complained of right foot pain. Id. ¶ 12 (citing VDOC-0023–0025). He also approved Stewart's request for high-top state boots. Id. ¶ 16 (citing VDOC-0028).

Stewart did not seek treatment for left foot or ankle pain until 2018. Id. ¶ 17. During an appointment on March 27, 2018, Stewart complained of left ankle pain. Id. ¶ 20 (citing VDOC-0067). Dr. Wang noted that Stewart had "flatfoot" or "pes planus" and that the foot

---

[2] When citing to the compilation of medical records available at ECF No. 19-3, the court will use the Bates numbering found in the lower-right corner of the documents.

was "deviated medially." Id. Dr. Wang "recommended conservative management, including a size 11 gel insole." Id.

Nearly a year later, on March 14, 2019, Stewart complained of left foot pain. VDOC-0083. He informed a nurse that "he was walking when his leg gave out on him." Id. Upon being contacted by the nurse, Dr. Wang ordered that Stewart be given a wheelchair to use for five days and that he be taken out of work for five days. Id.. Dr. Wang examined Stewart's left foot four days later and observed "trace/minimal swelling." Wang Decl. ¶ 23 (citing VDOC-084). Dr. Wang noted that Stewart had a "mild injury from the fall" and took him out of work for two days. Id.

During sick call on March 23, 2019, Stewart complained of left foot pain and reported that he was unable to walk without assistance. VDOC-0085. The examining nurse gave him a work excuse for five days and referred him to Dr. Wang. Id. During a follow-up evaluation on April 5, 2019, Stewart informed Dr. Wang that he "want[ed] to go back to work." VDOC-0176. After examining Stewart, Dr. Wang approved the request. See id. (noting that Stewart could "return to work").

Stewart did not seek treatment for left foot or ankle pain again until March 2020. Wang Decl. ¶ 26. On March 11, 2020, Stewart reported that his left foot had been "swollen for the past 2 week[s]" and was "not getting better." VDOC-0111. The examining nurse noted "pitting edema" above the ankle. Id. The nurse recommended that Stewart elevate his legs and monitor his salt intake. Id. The nurse also referred Stewart to Dr. Wang for further evaluation. Id.

Dr. Wang subsequently examined Stewart at the Chronic Disease Clinic. Wang Decl. ¶ 28 (citing VDOC-0179–0180). During the appointment, Stewart complained of left ankle swelling. Id. Dr. Wang noted that there was a "whitish appearance" between the toes of his left foot. Id. Based on Stewart's complaints of pain and swelling, Dr. Wang ordered left ankle x-rays, which were performed on March 18, 2020. VDOC-0221. The x-rays revealed soft tissue swelling and "[s]oft tissue calcification . . . at the critical zone of the Achilles tendon." Id. "No fracture or subluxation of the left ankle [was] identified." Id.

Over the next few weeks, Stewart continued to complain of swelling. VDOC-0112. On April 13, 2020, Dr. Wang reviewed the results of the ankle x-rays with Stewart. Wang Decl. ¶ 31 (citing VDOC-0112). Based on the results, Dr. Wang recommended "conservative management." Id.

Dr. Wang examined Stewart again on May 19, 2020, after he continued to complain of ankle pain. Wang Decl. ¶ 33 (citing VDOC-0115). Dr. Wang noted that he did not observe any swelling. Id. He diagnosed Stewart with chronic left ankle pain and ordered an ankle support. Id. Stewart acknowledged receiving the ankle support on May 21, 2020. VDOC-0284.

On June 9, 2020, Stewart was examined by a physician's assistant after he requested treatment for bowel issues and a burn on one of his fingers. Wang Decl. ¶ 36 (citing VDOC-0116). The physician's assistant made note of a "left midfoot collapse" and the possible need for orthopedic shoes or inserts. Id.

On June 16, 2020, Stewart informed a nurse that he wanted "a different pair of shoes [and] a stronger brace." VDOC-0117. The nurse referred Stewart to Dr. Wang to address these concerns. Id. Dr. Wang subsequently examined Stewart on June 22, 2020. Wang Decl. ¶ 38

(citing VDOC-0117). During the appointment, Stewart reported that he needed medical shoes because of his left ankle pain. Id. Dr. Wang's physical examination findings included "mild swelling" and "mild deviation of the midfoot." Id. Although Dr. Wang "did not feel that medical shoes were necessary," he agreed to request them. Id. He also continued Stewart's prescriptions for Tylenol and ibuprofen. Id.

Following the appointment, Dr. Wang completed a QMC Consultation Request for a medical boot. Wang Decl. ¶ 39 (citing VDOC-0185). Dr. Wang noted that Stewart had a history of cerebral palsy and chronic left ankle pain and that pertinent physical findings included "[p]es planus with mild midfoot pronation." Id. On June 24, 2020, the QMC Consultation Request was sent to Dr. Mark Amonette, the VDOC Medical Director, along with a copy of the x-ray report from March. Id. ¶ 40 (citing VDOC-0117, VDOC-0198).

On June 30, 2020, the VDOC Health Services Unit responded to the QMC Consultation Request with additional questions. Id. ¶ 41; see also VDOC-0199 ("How is offender's gait? Does he have any pain with ROM of his ankle? What kind of footwear did [he] use on the street—did he wear special shoes?"). On July 1, 2020, Dr. Wang entered an order to schedule Stewart for a follow-up appointment so that he could obtain answers to the Health Service Unit's questions. Wang Decl. ¶ 41. After meeting with Stewart on July 6, 2020, Dr. Wang resubmitted the QMC Consultation Request with answers to each of the questions. Id. ¶¶ 43–44 (citing VDOC-0199–0200).

Stewart saw Dr. Wang again on July 20, 2020, at which time the QMC Consultation Request had been approved. Id. ¶ 46 (citing VDOC-0119). Dr. Wang ordered that Stewart be evaluated by a local orthotics specialist for shoes. Id. That same day, an appointment was

scheduled at Commonwealth Orthotics and Prosthetics Center ("COPC"). Id. ¶ 47 (citing VDOC-0119). Stewart subsequently reported that the appointment had been cancelled due to COVID-19. VDOC-0124. On August 26, 2020, Dr. Wang ordered that the appointment be rescheduled. VDOC-0125.

On September 2, 2020, Stewart was measured for orthopedic shoes at COPC. VDOC-0210. He was fitted with custom shoes and a custom left insert on September 30, 2020. VDOC-0211. That same day, Stewart informed a nurse that he did not think his shoes fit correctly. VDOC-0133. The nurse noted that Stewart complained of swelling but denied experiencing any pain, and that the nurse would continue to monitor him. Id.

On November 13, 2020, Dr. Wang examined Stewart after he complained of a "pulled muscle" in his back. Wang Decl. ¶ 59 (citing VDOC-0138). During the examination, Stewart reported that his shoes were too big and that they were dragging on the right side. Id. Dr. Wang prescribed medication for Stewart's back issues and ordered that an appointment be made at COPC to have his shoes adjusted. Id.

Stewart appeared for a follow-up appointment at COPC on November 30, 2020. VDOC-0213. The consultation report indicates that the fit of Stewart's right shoe was adjusted to make it tighter. Id. COPC also provided extra inserts for his shoes. VDOC-0141.

On December 9, 2020, Dr. Wang met with Stewart to discuss his ankle issue. Wang Decl. ¶ 65 (citing VDOC-0143). Dr. Wang noted that his orthopedic shoes had been adjusted by COPC and gave him the extra inserts that COPC had provided. Id. Dr. Wang also renewed Stewart's prescription for Tylenol. Id.

On January 6, 2021, Stewart complained of wanting his "ankle fixed." VDOC-0147. Dr. Wang examined Stewart in the medical unit and noted that he observed no change in Stewart's gait. Wang Decl. ¶ 66 (citing VDOC-0147). Based on Stewart's medical history, including the chronic ankle problem, Dr. Wang ordered a non-urgent referral to an orthopedic specialist for further evaluation. Id. He also renewed Stewart's prescription for ibuprofen. Id.

On January 25, 2021, Stewart saw Dr. Brandon Bucker at OrthoVirginia for an orthopedic surgery evaluation. VDOC-0402. Stewart appeared for the appointment wearing regular shoes and informed Dr. Bucker that he had "not been allowed to wear his orthopedic footwear" while incarcerated. VDOC-0403. Stewart reported that his left ankle pain had begun "over 8 months ago with no inciting event," and he described his pain as "7 out 10," with the worst pain being in the sub-fibular region. Id. Upon physical examination, Dr. Bucker noted a "fixed valgus deformity of the left foot" and "significant pain [in the] sub-fibular region." Id. Dr. Bucker ordered and reviewed x-rays of the left ankle, which revealed a "[l]arge bone fragment posterior to the mid-distal tibia" and "[e]vidence of sub-fibular impingement." Id. Dr. Bucker diagnosed Stewart with "[l]eft ankle pain, unspecified chronicity" and "[s]ubfibular impingement of [the] lower left extremity," which he described as an "undiagnosed new problem with uncertain prognosis." VDOC-0402. Dr. Bucker discussed multiple treatment options with Stewart, including "medical equipment, surgical intervention and footwear modifications." Id. Dr. Bucker noted, however, that surgical intervention was not indicated at that time. Id. He provided Stewart with a "note allowing him to wear orthopedic footwear while incarcerated." Id. Dr. Bucker advised Stewart that he "may continue to be active as tolerated" and instructed him to return as needed. Id.

7

On March 1, 2021, Dr. Wang entered an order for Stewart to be assigned to a handicapped call as an "ADA accommodation." Wang Decl. ¶ 72 (citing VDOC-0155). A few days later, Dr. Wang met with Stewart regarding a recent request for new shoes. Wang Decl. ¶ 73 (citing VDOC-0155). Stewart claimed that Dr. Bucker had written an order for new shoes in the notes from the orthopedic consult. Id. Dr. Wang advised Stewart that he would obtain Dr. Bucker's notes to review for any such order. Id. Dr. Bucker's office notes were requested that same day. Id. ¶ 74 (citing VDOC-0155).

During a subsequent appointment on March 29, 2021, Stewart told Dr. Wang that Dr. Bucker had ordered a different ankle brace for his left ankle. Id. ¶ 76 (citing VDOC-0157). Dr. Wang informed Stewart that he would review Dr. Bucker's notes for such order. Id. He also renewed Stewart's prescriptions for Tylenol and ibuprofen. Id. Following the appointment, a medical employee again requested the notes from OrthoVirginia. VDOC-0158.

On March 31, 2021, Dr. Wang reviewed the records from the consultative examination and confirmed that Dr. Bucker had not ordered or recommended new shoes or a different ankle brace. Wang Decl. ¶ 78. Instead, Dr. Bucker merely noted that Stewart should be allowed to wear orthopedic shoes while incarcerated. Id.

On September 21, 2021, Dr. Wang met with Stewart in the medical unit to address complaints of heartburn and stomach pain. Id. ¶ 80 (citing VDOC-0559). During the appointment, Stewart informed Dr. Wang that he wanted his "ankle to be corrected by surgery." Id. They discussed the notes from Dr. Bucker's evaluation, which indicated that surgery was not indicated at that time. Id.

8

On October 19, 2021, Stewart was seen by a nurse regarding his ankle issue. VDOC-0560. He reported "having issues [with] ankle swelling" and that he was "unable to put [his] shoe on." Id. The nurse referred him to Dr. Wang for further evaluation. Id.

Dr. Wang examined Stewart in the medical unit on October 29, 2021. Wang Decl. ¶ 82 (citing VDOC-0560). Dr. Wang noted that Stewart continued to complain of ankle pain and that he observed "trace edema" on examination. Id. Since Stewart had already been evaluated by an orthopedic surgeon, Dr. Wang recommended continued symptomatic treatment, including an ankle support. Id. On November 5, 2021, Stewart acknowledged receiving an ankle wrap ordered by Dr. Wang. VDOC-0562.

### C. Stewart's Response in Opposition

On December 1, 2021, Stewart filed a one-paragraph response in opposition to Dr. Wang's motion for summary judgment. Stewart contends that Dr. Wang does not "want to do his job as a doctor" and will not make arrangements to "fix" Stewart's ankle. Pl.'s Resp. Opp'n, ECF No. 22, at 1.

## II. Standard of Review

The case is presently before the court on Dr. Wang's motion for summary judgment. The court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if

9

it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. Anderson, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks and citation omitted).

### III. Discussion

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry, 841 F.3d 219, 236 (4th Cir. 2016)). An Eighth Amendment violation occurs when a prison official "demonstrates 'deliberate indifference' to an inmate's serious medical needs." Id. (citations omitted); see also Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) ("A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.").

A claim for deliberate indifference has two components. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 209 (4th Cir. 2017). "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate

10

indifference to those needs, which is a subjective inquiry." Id. In this case, Dr. Wang does not challenge whether Stewart's foot and ankle issues are objectively serious. Instead, Dr. Wang argues that Stewart has not set forth any evidence to establish that he acted with deliberate indifference to Stewart's medical needs and that the undisputed medical records show that he was not deliberately indifferent.

The United States Court of Appeals for the Fourth Circuit has explained that "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" Jackson, 775 F.3d at 178 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). This is an "exacting standard," which requires more than mere negligence or medical malpractice. Id. (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). To rise to the level of an Eighth Amendment violation, "it is not enough that an official should have known of a risk." Id. Rather, the official "must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Id. "The subjective component therefore sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). To find a defendant liable, "the treatment given must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Hixson v. Moran, 1 F.4th 297, 303 (4th Cir. 2021) (quoting Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990)).

Applying these standards, the court concludes that Dr. Wang is entitled to summary judgment. First, there is no evidence from which a reasonable jury could find that Dr. Wang intentionally denied medical treatment for Stewart's foot and ankle issues. See Formica v.

11

Aylor, 739 F. App'x 745, 754 (4th Cir. 2018) (noting that the "necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care) (emphasis omitted) (citing Estelle, 429 U.S. at 104–05). The medical records establish that Dr. Wang personally examined Stewart on numerous occasions and that he undertook extensive efforts to address Stewart's complaints of pain and swelling. As indicated above, Dr. Wang ordered x-rays, medical boots, ankle supports, pain relievers, a wheelchair, and a handicapped cell. He arranged for Stewart to be measured and fit for shoes by an orthotics specialist and to have the shoes adjusted when Stewart reported that they did not fit correctly. Dr. Wang also arranged for Stewart to undergo a consultative examination by an orthopedic surgeon. To the extent Stewart disagrees with the treatment decisions made by Dr. Wang, the Fourth Circuit has "consistently found such disagreements [between an inmate and a physician over the inmate's proper medical care] to fall short of showing deliberate indifference." Jackson, 775 F.3d at 178.

      Second, there is no evidence from which a reasonable jury could find that Dr. Wang intentionally interfered with or delayed medical treatment recommended or prescribed by the outside specialists. Although Stewart may believe that surgery is necessary to "fix" his ankle, the orthopedic surgeon specifically noted that surgery was not indicated and that Stewart should simply be allowed to wear orthopedic shoes while incarcerated. And, as noted above, Stewart had already been fitted for orthopedic shoes by an orthotics specialist. Based on the evidence presented, no reasonable jury could find that the failure to arrange for surgical

treatment or provide different shoes constitutes deliberate indifference on the part of Dr. Wang.

Finally, to the extent Stewart alleges that he was misdiagnosed by Dr. Wang, "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." Webb v. Hamidullah, 281 Fed. App'x 159, 166 (4th Cir. 2008) (citing Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986)); see also Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001) (emphasizing that "a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment").

## IV. Conclusion

For these reasons, the court concludes that Dr. Wang is entitled to summary judgment. Although Stewart has a history of foot and ankle issues, the court is convinced that no reasonable jury could find that Dr. Wang exhibited deliberate indifference to his serious medical needs. Accordingly, the motion for summary judgment filed by Dr. Wang, ECF No. 18, is **GRANTED**. An appropriate order will be entered.

Entered: June 21, 2022

Digitally signed by Michael F. Urbanski Chief U.S. District Judge
Date: 2022.06.21 16:28:15 -04'00'

Michael F. Urbanski
Chief United States District Judge